746 S.W.2d 381 (1988)
23 Ark.App. 159
William CALDWELL, Appellant,
v.
The BLYTHEVILLE, ARKANSAS SCHOOL DISTRICT, NUMBER FIVE, Appellee.
No. CA 87-186.
Court of Appeals of Arkansas, Division II.
February 17, 1988.
Rehearing Denied March 23, 1988.
*382 John W. Walker, Lazar M. Palnick, Richard Roachell, Little Rock, J. LeVonne Chambers, Gail Wright, New York City, for appellant.
Gardner and Steinsiek, Blytheville, for appellee.
COOPER, Judge.
The appellant, William Caldwell, was a non-probationary teacher employed by the appellee school district. In April 1986, the appellant was notified that the superintendent was recommending that his contract not be renewed. The appellant requested a hearing before the school board which was held on May 26, 1986. At the close of the hearing, the board voted to uphold the superintendent's recommendation of non-renewal. The appellant appealed the decision to the circuit court. The circuit court found that the appellee had complied with the Teacher Fair Dismissal Act and afforded the appellant full due process, and that the board did not act arbitrarily, capriciously or discriminatorily. The circuit court dismissed the appeal. The appellant now argues four points before this court: that the school board's decision violated his First Amendment right to freedom of speech; that the school board's decision was arbitrary and capricious; that the school board violated section 80-1266.6 of the Arkansas Teacher Fair Dismissal Act; and that the school board erred in failing to make particularized findings on the evidence presented against him. We affirm.
The record reveals that on December 10, 1985, the principal of West Jr. High School, Idell Jenkins, presented a new grading policy to the teachers at a faculty meeting. The appellant objected to this policy, and began discussing it with Mr. Jenkins. Mr. Jenkins characterized the appellant's attitude as "belligerent." The assistant principal, Paul Stubblefield, and another teacher, Zeak Lacy, also testified that the appellant was belligerent and quite upset. At one point the appellant stood up and pointed his finger at the principal. When the principal attempted to move on to other matters, the appellant attempted to return the discussion to the grading policy. The appellant admitted that he had objected loudly to the new policy.
The next day, Mr. Jenkins left a memo in the appellant's box that indicated he did not approve of the appellant's conduct in the faculty meeting. The appellant then requested a conference with Mr. Jenkins and the assistant superintendent for instruction, D.B. Meador. At that conference the appellant again became upset and accused Meador and Jenkins of conspiring to have him fired and he called Jenkins a liar four times. On December 17, 1985, Dr. Frank Ladd, the superintendent, wrote a letter to the appellant reprimanding him for his behavior in both the conference and the faculty meeting and warned the appellant that any further such conduct would result in the appellant's suspension and dismissal. Dr. Ladd also warned the appellant that his conduct would be considered when the decision was made whether to recommend renewal or non-renewal of his contract.
*383 On February 28, 1986, Jenkins attempted to hold a conference with the appellant concerning some complaints he said he received about the appellant's using class time to discuss the lack of black cheerleaders at the school. According to Jenkins, the appellant was not responsive; he asked several times if Jenkins was through yet and eventually walked out of the conference. On April 18, 1986, Ladd sent a certified letter to the appellant informing him that he was recommending to the board that the appellant's contract not be renewed. The letter listed the four following reasons for non-renewal:
1. Your conduct at the faculty meeting of December 10, 1985, where the teachers of your school were instructed relative to grading practices, and at which meeting you became disrespectful of your principal over the instructions that were being given.
2. The conference of December 11, 1985, between yourself and your principal wherein you became belligerent with the principal, raised your voice and called him a liar on more than one occasion.
3. The conference of February 28, 1986, between yourself and your principal regarding complaints from your students relative to your comments made during classroom hours. At this conference, again you became belligerent and accused your principal of attempting to have you fired.
4. The continuing problem with your principal and attitude toward him for the past several years as reflected by report of such conferences, copies of which have been furnished to you. As noted earlier, a hearing was held before the board, which voted not to renew the appellant's contract, adopting the superintendent's reasons as the basis for its action. On appeal to the circuit court, no additional evidence was taken, but the case was submitted on the written record of the hearing before the board, a copy of the Teacher Fair Dismissal Act together with the minutes of the school board meeting whereby the Act was adopted as the policy of the board, and the appellant's answers to interrogatories.
The appellant first argues that the board violated his right to freedom of speech. It is the appellant's contention that the statements he made at the December faculty meeting and the comments he made in class concerning the lack of black cheerleaders was constitutionally protected and the board's action in dismissing him for making the statements violated his right to make the statements. However, this issue was not presented to either the board or the circuit court. We cannot find any mention of this argument in either the record or the abstract. We have consistently held that we will not consider issues raised for the first time on appeal and that this rule applies equally to constitutional issues which are not raised in the court below. Ferguson v. City of Mountain Pine, 278 Ark. 575, 647 S.W.2d 460 (1983). Therefore, we do not reach the merits of the appellant's first point.
The appellant next argues that the board's decision was arbitrary and capricious. We disagree. Any certified teacher who has been employed continuously by a school district for three years or more may be terminated or the board may refuse to renew the contract of such teacher for any cause which is not arbitrary, capricious, or discriminatory, or for violating the reasonable rules and regulations promulgated by the school board. Ark. Stat.Ann. § 80-1266.9(b) (Supp.1985). The determination not to renew a teacher's contract is a matter within the discretion of the school board, and the reviewing court cannot substitute its opinion for that of the board in the absence of an abuse of that discretion. Leola School District v. McMahan, 289 Ark. 496, 712 S.W.2d 903 (1986). In our judicial review of the trial court's decision, we affirm unless the court's findings were clearly erroneous. Moffitt v. Batesville School District, 278 Ark. 77, 643 S.W.2d 557 (1982). It is not our function to substitute our judgment for the circuit court's or the school board's. *384 Green Forest Public Schools v. Herrington, 287 Ark. 43, 696 S.W.2d 714 (1985).
The question before the trial court was whether the school board refused to renew the appellant's contract for reasons permitted by the Teacher Fair Dismissal Act. Leola, supra. A school board's action in this regard is arbitrary and capricious only if the board's decision is not supportable on any rational basis. Leola, supra; Lee v. Big Flat Public Schools, 280 Ark. 377, 658 S.W.2d 389 (1983).
Jenkins and Meador both testified that they felt the conduct exhibited by the appellant was disrespectful and insubordinate. Although they agreed that the appellant eventually complied with directives, they also indicated that every conference they had with him ended up in a verbal fight. Ladd testified that the decision not to renew was a culmination of several years of this type of conduct. The appellant testified that he had a personality conflict with Jenkins; that Jenkins was jealous of him; that Stubblefield was jealous of him because he was popular with the students; that Meador was insecure; and that Ladd was confused. In King v. Elkins, 22 Ark.App. 52, 733 S.W.2d 417 (1987), we refused to adopt a definition of insubordination that required a showing of willful disobedience. In the case at bar, the appellant eventually did comply with the directives of his supervisors, but only after verbal outbursts. It is not irrational for a principal to expect his teachers to not only comply with his directives, but to also act in a respectful, courteous and professional manner. This is not to say that a teacher may not disagree with school policy; however, a teacher should not expect to be able to shout at his supervisors, call them liars, accuse them of conspiring against him, and walk out on conferences without action being justified by the board.
The appellant next argues that the board dismissed him in violation of Ark. Stat.Ann. § 80-1266.6. That statute provides:
Whenever a superintendent or other school administrator charged with the supervision of a teacher believes or has reason to believe that a teacher is having difficulties or problems meeting the expectations of the district or its administration and the administrator believes or has reason to believe the problems could lead to termination or nonrenewal of contract, the administrator shall bring the problems and difficulties to the attention of the teacher involved in writing and shall document the efforts which have been undertaken to assist the teacher to correct whatever appears to be the cause for potential termination or nonrenewal.
It is appellant's contention that the district failed to give him notice of his problems and that he was dismissed before he had an opportunity to remedy them. We disagree.
The statute relied upon by the appellant is part of the Teacher Fair Dismissal Act. It is sufficient if the board has acted in substantial compliance with the Act. Lee, supra. Superintendent Ladd addressed a letter to the appellant on December 17, 1985, which specifically stated that the appellant's behavior was unprofessional and insubordinate and that such behavior would not be tolerated. The appellant was warned that any further such behavior would result in his immediate termination and suspension. In his brief the appellant alleges that this letter was not mailed to him, but placed in his personnel file and he did not see it until April. However, the record reveals that the appellant was testifying about four written documents at the time, and he alleged that he did not see two of them. It is impossible to tell from the record to which documents he is referring. Furthermore, the appellant did receive a copy of a memo from his principal the day after the faculty meeting which stated that the appellant's conduct was "asinine and unprofessional" and that he would no longer "get into a running dialogue with any teacher in a faculty meeting concerning any issue while the rest of the faculty sit there and suffer." Lastly, the appellant admitted that, beginning in 1980, he had received letters which resulted from conferences on his failure to follow directions. These actions prior to 1985 will not be considered as evidence of the appellant's *385 conduct because the letters were not made part of the record and there is no evidence that they were in compliance with § 80-1266.6. However, the appellant's admissions are clearly persuasive of whether or not he had notice of his difficulties. We find that while it is unclear in the record as to whether the board strictly complied with § 80-1266.6, it is clear that there was substantial compliance and that the appellant had written notice of his objectionable conduct which occurred in the 1985-86 school year. Murray v. Altheimer-Sherrill Public Schools, 294 Ark. 403, 743 S.W.2d 789 (1988).
The appellant's last argument also concerns the Teacher Fair Dismissal Act. At the close of the school board meeting, and after the board had voted not to renew the appellant's contract, there was discussion about the fact that the statute requires a finding by the board as to correctness or incorrectness of the reasons for nonrenewal. The board then decided to vote on the issues right away. Using the four reasons Ladd had written in his letter to the appellant, the board voted that each of the four reasons was true. The Act requires that subsequent to any hearing granted a teacher the school board shall, by majority vote, make specific written conclusions with regard to the truth of each reason given the teacher in support of the recommended termination or nonrenewal. Ark.Stat.Ann. § 80-1266.9(c) (Supp.1985). It is the appellant's argument that the board's adoption of the superintendent's reasons for dismissal falls short of the statutory requirements. The appellant then cites cases which were decided under the Administrative Procedure Act and points out that this Court has not hesitated to reverse an agency decision when it is not explicitly backed by specific findings of fact.
The Teacher Fair Dismissal Act does not require that the board make specific findings of fact, only that it make specific written conclusions with regard to the truthfulness of the reasons for dismissal. As stated above, this Court will not reverse if the board has substantially complied with the Act. Lee, supra. The conclusions set out by Ladd were clear, specifically identified objectionable conduct exhibited by the appellant, and specifically pointed out the occasions when the conduct occurred. The board heard extensive testimony about the appellant's conduct and about the occasions when it occurred. We cannot say that it was error for the board to vote to adopt the reasons given by the superintendent and to vote on whether or not they found them to be true.
Because the board substantially complied with the Teacher Fair Dismissal Act and because the board's actions were not arbitrary, capricious, or discriminatory, we cannot say that the trial court's dismissal was clearly erroneous, and we affirm.
Affirmed.
CORBIN, C.J., and JENNINGS, J., agree.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
COOPER, Judge.
The appellant has filed a petition for rehearing requesting that we consider the appellant's argument that the school board's decision not to renew the appellant's teaching contract violated his First Amendment right to free speech. We have agreed to consider the appellant's argument.
A court deciding a claim by a public employee that his or her first amendment rights have been violated must engage in a three-step analysis. Bowman v. Pulaski County Special School District, 723 F.2d 640 (8th Cir.1983). The court must determine (1) whether the employee has carried the burden of demonstrating that he engaged in protected activity, Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); (2) whether the protected activity was a substantial or motivating factor in the actions taken against the employee, Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); and (3) whether the *386 employee has defeated the employee's claim by demonstrating that the same action would have been taken in the absence of the protected activity, Givhan v. Western Line Consolidated School District, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).
In this case the appellant argues that his discussion with his class concerning the number of black cheerleaders was protected speech. Even if we were to agree with the appellant that this was constitutionally protected speech, the appellant has not demonstrated that he was dismissed because of the speech. Thus the appellant has not met the second requirement of the test stated in Bowman. The district made it clear that the appellant's contract was not being renewed because of his insubordination and not because of his speaking to his class about the cheerleader situation or because he disagreed with a new grading policy. These facts have been adequately discussed in our previous opinion and need not be restated here. Because the appellant has not demonstrated that the claimed protected activity was the motivating factor behind the board's actions, we deny the petition for rehearing.